**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1998-IA-01456-SCT**

*MICHAEL E. EARWOOD AND FOX, EARWOOD & CHILDERS, PLLC*

*v.*

*MARY ELIZABETH REEVES, EXECUTRIX OF THE ESTATE OF E.P. REEVES, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/1998 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ROBERT BOSTICK CHILDERS |
| ATTORNEYS FOR APPELLEE: | DAVID SHOEMAKE |
| | EDDIE H. BOWEN |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED AND REMANDED - 08/23/2001 |
| MOTION FOR REHEARING FILED: | 9/21/2001; denied 11/8/2001 |
| MANDATE ISSUED: | 11/15/2001 |

**BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. This is an interlocutory appeal from the Covington County Circuit Court's denial of a joint motion filed by Michael E. Earwood (Earwood) and his law firm, Fox, Earwood and Childers, PLLC (the firm), requesting transfer of this case to the Hinds County Circuit Court, First Judicial District. Transfer was sought on the grounds that neither Earwood nor the firm resided in, nor was domiciled in, Covington County and that all substantial acts and omissions set forth in the complaint of E. P. Reeves (Reeves) occurred and accrued within Hinds County.

¶2. Aggrieved by the Covington County Circuit Court's denial of the transfer and subsequent denial of Earwood's and the firm's joint motion to amend or withdraw certain admissions, Earwood and the firm sought certification from the circuit court for an interlocutory appeal pursuant to M.R.A.P. 5(a). Upon the trial court's denial of the interlocutory appeal certification, Earwood and the firm filed a joint petition for interlocutory appeal with this Court, and it was granted in December 1998. The issues raised by Earwood and the firm are as follows:

> **I. DID THE TRIAL COURT ERR IN DENYING THE DEFENDANTS' MOTION TO TRANSFER AND REFUSING TO TRANSFER THE CASE UNDER THE PROVISIONS OF MISS. CODE ANN. § 11-11-3?**

> **II. DID THE TRIAL COURT ERR IN DENYING THE DEFENDANTS' MOTION TO WITHDRAW OR AMEND ADMISSIONS PURSUANT TO MRCP 36(b)?**

¶3. Finding no error in the Covington County Circuit Court's decisions, we affirm.

## FACTS

¶4. Reeves's son, D. Preston Reeves (Preston), retained Earwood to provide him with legal representation concerning a proposed $1.3 million purchase of the business known as Tech Plastic Products of Jackson, Inc. (TPJ), a Mississippi corporation. In connection with the proposed purchase, Earwood prepared certain documents for Preston to send to Darrell Hart (Hart), the president of Tech Plastics and Engineering, Inc. (TPE), a Mississippi corporation and Chapter 11 Debtor-in-Possession, which owned TPJ. The first was a letter of agreement dated April 13, 1995, printed on Preston's letterhead showing his Jackson address, and signed by Preston in his individual capacity, and Hart as president of TPE. The second was a purchase and sale agreement executed by Preston and Hart, in the same capacities, on April 24, 1995. The wording of both documents regarding earnest money was virtually identical. The first document provided that Preston "shall deposit the sum of $100,000 in escrow with the firm of Fox, Earwood & Childers of Jackson, MS, same to be paid to TPE at closing and applied to the cash down payment" and the second document stated that Preston "has deposited the sum of $100,000 in escrow with the firm of Fox, Earwood & Childers, of Jackson, MS, same to be paid to TPE at closing and applied to the cash purchase price. . . ."

¶5. One month after the execution of the purchase and sale contract, a third document was prepared and executed. This was an asset purchase agreement between TPE and Preston's newly-formed corporation, Precision Plastics & Engineering, Inc. (PPE). It was executed by Hart as president of TPE and Preston as president of PPE and contained the following provision:

> This Agreement supersedes, in its entirety, the Purchase and Sale Agreement dated April 24, 1995 by and between TPE and Precision which is hereby terminated and canceled in its entirety and any and all other agreements, written or oral, by and between the parties pertaining to the subject matter hereof.

(emphasis added). The earnest money provision in this document was worded somewhat differently, acknowledging that Preston had previously paid the $100,000 into the law firm's escrow and providing that: "The Escrow Deposit shall be applied to the Purchase Price at Closing or otherwise held and disbursed in accordance with the terms and provisions hereof." (emphasis added).[1]

¶6. Apparently at Preston's direction and after being furnished copies of all three documents, Reeves wired $100,000 from his Covington County bank account to the firm's trust account for Preston's purchase of TPJ. Reeves alleges in his complaint that he talked by phone from Collins (in Covington County) with Earwood (in Hinds County) on several occasions and that Earwood confirmed that the $100,000 belonging to Reeves would go toward the down payment of the purchase price and would be" paid unto TPE at closing." In his complaint, Reeves did not claim to be a party to any of the contracts, rather that a fiduciary relationship arose when he placed confidence in Earwood upon "enter[ing] into the escrow arrangement."

¶7. Earwood, on the other hand, avers that neither he nor the members of the firm were aware of the source of Preston Reeves's earnest money or the nature of what Earwood considered to be a loan transaction between Preston and his father. In support of their contention that the funds were a loan, Earwood asserts that a few months after the termination of the proposed purchase, Preston filed a Chapter 7 personal bankruptcy petition, listing Reeves as an unsecured creditor to whom Preston owed $33,000. Furthermore, Earwood asserts in his answer that prior to execution of the asset purchase agreement

Preston entered into an hourly fee agreement with Earwood whereby all legal fees and expenses incurred on the acquisition would be paid out of the earnest money deposit, either at closing of the sale or upon termination of the escrow account. Earwood also asserts in his that he mailed to Preston and Reeves an itemized statement of professional services rendered to Precision Plastics and Engineering, Inc., which Reeves acknowledges receiving, and a bill to him as well. The bill and fee agreement are not a part of the record.

¶8. Approximately six months after the contract was executed, the proposed purchase fell through and the escrow account was terminated. Earwood asserts that the fees and expenses of some $33,000 were deducted in accord with the fee arrangement and at the direction of Preston, the client and legal owner of the funds. On October 2, 1995, Reeves faxed Earwood demanding that the funds retained from the escrow account be paid over to him.

¶9. On the same day Earwood received the fax, Earwood responded by a letter written to Reeves and Preston, mailed separately to their respective addresses in Collins and Jackson. Earwood stated that Reeves's assumption that the escrow funds were to be used for the purchase of Tech Plastics of Jackson was correct, but he further stated his understanding that the legal fees and expenses, which he viewed as part of the costs of acquisition, were to be paid at closing or, if closing did not take place, upon the termination of the escrow account. However, Earwood indicated that he had represented and worked with Preston on various matters over a period of 12 or 13 years and that he hoped the matter of payment for work this time would not adversely affect their relationship. Earwood's letter advised that substantial fees had been incurred, owing in part, to the protracted nature of the negotiations, much of which were beyond his control and explained that it had been eight months since Earwood was retained and that settlement on the legal fees and expenses incurred needed to be made. Accordingly, Earwood advised Reeves and Preston that the attorney's fees and expenses were being withheld from the $100,000 in escrow and he enclosed a check in the amount of $66,983.80 which Reeves deposited in his bank in Covington County on October 5, 1995.

¶10. More than two years after depositing Earwood's check, Reeves filed his complaint. He does not claim to be a party to the contract. Rather, he relied upon the language of the clause which stated that the $100,000 would either be applied to the purchase or "otherwise disbursed in accordance with the terms and provisions hereof." Reeves interprets the phrase to mean that his entire $100,000 would be returned if the purchase did not transpire. Specific directions concerning disbursement may have been in the contract which Earwood alleges existed between Preston and Earwood; however, such contract is not part of the record.

## DISCUSSION

### I. DID THE COURT ERR IN DENYING EARWOOD'S MOTION TO TRANSFER AND REFUSING TO TRANSFER THE CASE PURSUANT TO MISS. CODE ANN. § 11-11-3?

### Standard of Review

¶11. An application for a change of venue is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case. *Beech v. Leaf River Forest Prods, Inc.,* 691 So. 2d 446, 448 (Miss. 1997) (quoting ***Mississippi State***

*Highway Comm'n v. Rodgers*, 128 So. 2d 353, 358 (1961). "The trial court must give the plaintiff the benefit of reasonable doubt with respect to the venue selection, and this Court must do the same on appeal." *Pisharodi v. Golden Triangle Reg'l Med. Ctr.*, 735 So. 2d 353, 354 (Miss. 1999) (citing *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1156 (Miss. 1992).

## Analysis

¶12. Reeves points to several factors in support of his contention that venue is proper in Covington County. Reeves is a resident of Covington County. He never met with Earwood in Hinds County and all correspondence and telephone conversations occurred while he was in Covington County. In particular, Earwood's correspondence was addressed to Reeves at his address in Collins. The $100,000 which Reeves wired to the Earwood firm trust account was wired from his bank account in Covington County. When the purchase failed to materialize, Earwood sent a check to Reeves at his address in Covington County which, Reeves claims was $33,016.20 short. He reasons that his financial loss occurred in Covington County because that is where he lived and realized the shortage or loss upon receipt of the check which had been mailed to him at his Covington County address.

¶13. Miss. Code Ann. § 11-11-3 (Supp. 2000) provides: "Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue. . . . "

¶14. Because the statute provides that venue may be proper either where a cause of action occurs **or** accrues, this Court has upheld venue in either of two separate locations in instances where occurrence and accrual are not concurrent. This Court first defined and distinguished "occur" and "accrue" in *Flight Line, Inc. v. Tanksley,* 608 So.2d 1149 (Miss. 1992), in which it stated:

> **"Occur"** and **"accrue"** are not synonymous, legally or otherwise, as the disjunctive connector forthrightly suggests. We read accrual in its formalistic sense. A cause of action **accrues** when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. . . this may well mean the **moment injury is inflicted**, that point in space and time when the **last legally significant fact is found. . .**

*Id*. at 1156 (emphasis added). *See also* *Burgess v. Lucky*, 674 So. 2d 506, 509 (Miss. 1996). In *Tanksley,* the plaintiff was injured unloading a plane in Chicago that had been negligently loaded in Vicksburg. This Court held that the place where the plane was incorrectly loaded was where the injury **occurred,** and therefore, held that venue was proper there. This Court further stated that "the cause of action **at least partially occurred** in Warren County." *Tanksley,* 608 So. 2d at 1156 (emphasis added). This Court noted that, while it is common sense that a "divided" injury could not take place absent the conduct in the county of origin, the converse is equally true. *Id.*

¶15. At the least, Reeves's alleged claim **accrued** in Covington County where he received the check for $66,983.80 from the firm's escrow account. This would be tantamount to the **last legally significant fact** as contemplated in *Tanksley. Id*. at 1156.

¶16. Reeves's alleged cause of action **at least partially occurred** in Covington County from whence he initially wired the money from his bank account, discussed the acquisition telephonically, received the check he considered short, and deposited it back into his account. The trial court's holding that venue was proper

in Covington County is in harmony with this Court's decision in *Tanksley*.

> In the final analysis, venue is about convenience.. . . [T]here is nothing in the phrase "where the cause of action may occur. . . " that limits the judicial search for but a single county.. . . [I]t is common experience that breach and causation and impact do not all always happen at once.[ ] At the very least, the word "occur" connotes each county in which a **substantial component of the claim** takes place. . . .

*Id.* at 1157 (emphasis added). It is not unreasonable to view Reeves's receipt of the check for an allegedly insufficient amount as substantial components of the claim.

¶17. Where venue is proper in two different counties, "[o]f right, the plaintiff selects among the permissible venues, and his choice must be sustained [ ] unless in the end there is no credible evidence supporting the factual basis for the claim of venue." *Id.* at 1155. Furthermore, the trial court "must give the plaintiff the benefit of the reasonable doubt, and we do so on appeal as well." *Id.* at 1155 (quoting *Jefferson v. Magee,* 205 So. 2d 281, 283 (Miss. 1967)). *See also* *Pisharodi,* 735 So. 2d at 354; *Salts v. Gulf Nat'l Life Ins. Co.*, 743 So. 2d 371, 373 (Miss. 1999).

¶18. Finally, the foregoing principles coincide with the logical principle of practicality. Applying all to the instant case, venue is proper in Covington County and Hinds County. Therefore, the trial court's denial of transfer of the case was not error.

### II. DID THE COURT ERR IN DENYING EARWOOD'S MOTION TO WITHDRAW OR AMEND ADMISSIONS PURSUANT TO M.R.C.P. 36(b)?

### Standard of Review

¶19. The action of the lower court is subject to review by this Court using the abuse of discretion standard. *Sawyer v. Hannan,* 556 So.2d 696, 698 (Miss. 1990). A certain amount of discretion is vested in the trial judge with respect to whether he or she will take matters as admitted. *In re City of Ridgeland*, 494 So.2d 348, 353 (Miss. 1986) (Although no response to the request for admissions was filed within the thirty days prescribed in M.R.C.P. 36(a), this Court regarded a timely filed motion to stay to be the equivalent of a motion for extension of time within which to respond to the request for admission). Matters of discovery are left to the sound discretion of the trial court, and discovery orders will not be disturbed unless there has been an abuse of discretion. *Dawkins v. Redd Pest Control Co.,* 607 So.2d 1232, 1235 (Miss. 1992).

### Analysis

¶20. In order to analyze the arguments regarding this issue, the following chronology of events is helpful:

Reeves filed a complaint against Earwood and the firm. Simultaneously Reeves filed his first request for admissions, production of documents and first set of interrogatories.

| Date | Event |
|---|---|
| 12-01-07 | Summons returned, personal service on Earwood and the firm. |
| 12-22-97 | Without having answered, or responded to discovery, and with no request for additional time having been made, Earwood and the firm filed their motion to transfer the case to Hinds County, but did not set the motion for hearing. |
| 3-23-98 | Reeves notices hearing on Earwood's motion to transfer, set for April 17, 1998. |
| 5-22-98 | Brief telephonic hearing on motion to transfer. No record was made. |
| 6-17-98 | Order filed by Covington County Circuit Judge denying the motion to transfer, without stating any reasons for the denial. |
| 6-29-98 | Earwood and firm file Motion for Reconsideration saying simply that "under recent applicable case authority to be presented upon the hearing hereof, no causative events occurred in Covington County". |
| 7-17-98 | Reeves filed motion to deem requests for admissions admitted, motion to compel, and motion for partial summary judgment, set for hearing September 4, 1998. (However, these motions were not mentioned at the September 4, 1998 hearing which addressed only the motion to reconsider). |
| 9-9-98 | Earwood and the firm filed a joint answer to Reeves' complaint, joint response to requests for admissions, and an affidavit of Earwood. |
| 9-4-98 | Hearing on Earwood's and the firm's motion to reconsider the trial court's earlier denial of their motion to transfer case to Hinds County.[2] |
| 9-22-98 | Orders denying motion for reconsideration, compelling discovery, and setting for trial entered. |
| 9-23-98 | Reeves filed brief in support of motion to deem responses to admissions admitted and for partial summary judgment. |
| 9-30-98 | Earwood and the firm filed joint motion to withdraw or amend admissions pursuant to M.R.C.P. 36(b). |
| 10-12-98 | Earwood and the firm filed motion to amend order for certification pursuant to M.R.A.P. 5(a). |
| 10-16-98 | Trial court entered Findings of Fact and Conclusions of Law (following consideration of briefs submitted by the parties) granting Reeves' motion to deem requests admitted but denying partial summary judgment as to liability. |

| Date | Event |
|---|---|
| 10-29-98 | Trial court entered orders denying Earwood's motion to withdraw or amend admissions and granting Reeves' motion to deem requests for admissions admitted. |
| 11-4-98 | Order of amendment denying certification under M.R.A.P. 5(a). |

¶21. Earwood and the firm argue that their delay in serving responses was not the result of inexcusable delay, rather, that it was because they believed in good faith that the filing of their Motion to Transfer tolled the time limit for responding. They based their belief upon the fact that M.R.C.P. 12(a)(1) provides for the court's altering of time within which the defendant must serve his answer to a pleading. Yet they do not assert that the court of its own initiative extended the time period for response. Nor do Earwood and the firm assert that they requested that the court extend the response period. Further, they cite no specific provision in the rules, nor any case law which expressly states that the filing of a motion to transfer in any way automatically tolls the time limit for responding. In short, they do not provide this Court with specific authority on which they based their belief.

¶22. Rules 12 and 36 are well-delineated rules carrying harsh sanctions for failure to comply therewith. The permissive language of these rules respecting the trial court's duties clearly provides that relief from the definite time periods is only available at the trial court's discretion. There is no language in either rule which would indicate an automatic tolling of a response period, which Earwood seems to argue is provided in M.R.C.P. 12(a)(1).

¶23. M.R.C.P. 12 states, in pertinent part:

**(a) When presented.** A defendant shall serve his answer within thirty days after the service of the summons and complaint upon him or within such time as is directed pursuant to Rule 4. . . . The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court:

(1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served *within ten days after notice of the court's action;*

. . .

The times stated under this subparagraph may be extended, only once, for a period not to exceed ten days, upon the written stipulation of counsel filed in the records of the action. . . .

M.R.C.P. 12 (emphasis added).

¶24. M.R.C.P. 36 provides in pertinent part:

(a) **Request for Admission.** A party may serve upon any other party a written request for the admission, for the purpose of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact. . . .*The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow,* the party to whom the request is

directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of forty-five days after service of the summons upon him. . . .

**(b) Effect of Admission.** Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions governing amendment of a pre-trial order, the court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. . . .

M.R.C.P. 36 (emphasis added).

¶25. Notwithstanding the language of the rule, Earwood argues that, pursuant to M.R.C.P. 36, the court *should* have permitted withdrawal of the deemed admissions because the presentation of the case on the merits would be promoted and that permitting withdrawal would not result in undue prejudice or delay to Reeves in maintaining his action on the merits. Yet Earwood's dilatory response had already delayed Reeves's action. Earwood's response was not forthcoming until almost ten months after the complaint, and only after Reeves filed a motion to deem requests admitted, to compel and for partial summary judgment. Therefore, the trial court's reluctance to exercise its broad discretion in favor of Earwood is not illogical.

¶26. We are compelled to acknowledge the adage that rules are promulgated for a purpose, this being precisely an instance in which that principle applies. Mechanisms exist whereby a trial court *may* hold that an untimely response does not constitute a deemed admission because the trial court has broad discretion in pretrial matters. However, because of the trial court's broad discretion in such matters, it certainly may also require that parties comply with the rules as stated. Here, the trial court found no compelling reason to allow disrespect of M.R.C.P. 36 regarding the set time for responding to requests for admissions; and we find no compelling reason to hold that such was an abuse of discretion. Earwood knew or should have known the severe consequences of failing to timely respond.

¶27. Earwood avers that:

the lower court's refusal to permit withdrawal has and will continue to impose extreme, undue prejudice in the presentation of evidence in defense of the lawsuit and, most likely, will result in entry of summary judgment against Earwood and his firm, thus foreclosing any trial and defense of the case on the merits before the jury.

¶28. Any prejudice which Earwood believes has been or will be imposed upon them is self-imposed. Earwood was aware of the date on which the requests for admission were served. It was completely within their power to either comply with the rules, request additional time in which to respond, or seek clarification from the court concerning a rule they, in good faith, may have believed, yet were aware was neither expressly stated in the controlling rules nor case law. This is not an instance where an attorney's mistake prejudiced the defense of a client who knew nothing of the rules or requirements and would suffer because of his attorney's inaction. The client was an attorney and his entire firm.

¶29. In *Martin v. Simmons*, 571 So. 2d 254 (Miss. 1990), this Court affirmed the chancellor's action of

deeming the requests for admissions admitted where the chancellor found no justifiable excuse for the attorney's failure to file an answer. *Id.* at 255. Another case in which a party failed to comply with M.R.C.P. 36 was *Sunbelt Royalty, Inc. v. Big G Drilling Co.*, 592 So. 2d 1011 (Miss. 1992). There, the requests for admissions went unanswered for nine months. This Court affirmed the trial court's finding that the matters therein could have been answered in a few minutes and the trial court's deeming the requests admitted. *Id.* at 1012-13.

¶30. In the case sub judice*,* the trial court, as did the lower courts in *Martin* and *Sunbelt,* insisted upon the operation of Rule 36. Earwood failed to communicate to the court their reason for delay, or belief that they should, by whatever mechanism, be allowed to delay their response. Thus the court had no way to know of such belief on the part of Earwood, and could only assume that this was, if not willful disregard for the rules, an oversight. Even such oversight does not place the matter beyond the purview of Rule 36. The court found that Earwood failed to justify his dilatory response and beyond that, found no compelling circumstances existed in which the court should allow the untimely reply to avoid admissions.

¶31. There was no abuse of discretion on the part of the trial court, and this issue is without merit.

## CONCLUSION

¶32. Earwood's assignments of error are without merit. The trial court did not err in ruling that venue is proper in Covington County and that the requests for admissions not timely answered by Earwood are therefore deemed admitted. Thus, we affirm the orders of the Covington County Circuit Court and remand this case to that court for further proceedings.

¶33. **AFFIRMED AND REMANDED.**

**PITTMAN, C.J., McRAE, P.J., MILLS AND DIAZ, JJ., CONCUR. SMITH , J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J., AND EASLEY, J. WALLER, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶34. The majority concludes that venue is proper in Covington County because Reeves is a resident of that county, the $100,000 placed in Earwood's escrow account was wired from Covington County to Hinds County, correspondence transpired between Earwood and Reeves in Covington County, and Reeves realized his loss when he opened the letter from Earwood enclosing the earnest money less attorney's fees at his residence in Covington County. For these reasons, Reeves chose to file this civil action in Covington County, and the trial court concluded that venue was proper in Covington County pursuant to Miss. Code Ann. § 11-11-3 (Supp. 2000). However, venue was not proper in Covington County under the applicable statute. Therefore, the circuit court's order denying a change of venue should be reversed and this case should be remanded for a prompt transfer of venue to Hinds County.

¶35. According to Section 11-11-3, "civil actions . . . shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue . . . ." Earwood, is a resident of Hinds County, his law firm is located there, and all business conducted in this case and all legal services rendered to Preston Reeves in this case were performed there. As such, venue is proper in Hinds County. Additionally, this cause of action did indeed both occur and accrue in Hinds

County. As this Court distinguished in *Flight Line, Inc. v. Tanksley*, 608 So.2d 1149 (Miss. 1992), "'occur' means event oriented, connoting the place where a substantial component of the claim takes place, whereas, an action 'accrues' at that time when it comes into action as an enforceable claim, that is, the right to sue becomes vested at that point in space in time when the last legally significant fact is found." *Id*. at 1156.

¶36. Here, the cause of action occurred during the time Preston Reeves hired Earwood to represent him in purchasing Tech Plastic Products of Jackson. According to the record, at the time the earnest money was wired to him, Earwood did not know the source of the earnest money or the loan made by E.P. Reeves to his son, Preston. In applying the definition of "occur" from *Flight Line*, it is clear that the county in which a substantial component of the claim took place was Hinds County, not Covington County. According to the record, Earwood and Preston Reeves entered into a fee agreement that Earwood would be paid an hourly fee and all legal expenses incurred on the Tech Plastics acquisition would be paid out of the earnest money deposit, either at the closing of the sale or upon termination of the escrow. Every document, contract, and agreement involving the sale of Tech Plastics of Jackson was prepared, executed, and was to be performed in Hinds County. The injury alleged by Reeves took place in Hinds County where the disputed funds were retained, that being Earwood's law firm trust account located in Hinds County. The majority addresses when it believes the cause of action accrued, but it does not address when the cause of action occurred.

¶37. The majority concludes that the cause of action accrued when Reeves received the check for $66,983.80 at his home in Covington County and that was the last legally significant fact in the case. However, the causes of action in this case accrued at the point in time when Earwood allegedly breached his duty of good faith and fair dealing, allegedly breached his fiduciary duties, allegedly made fraudulent misrepresentations, and allegedly breached his contract with Reeves. The point in time these alleged causes of action accrued was when Earwood was representing Preston Reeves in Hinds County. That was the point in time when the last legally significant fact took place. Looking at when the cause of action accrued, it is clear that the cause of action accrued in Hinds County.

¶38. In *Forrest County Gen. Hosp. v. Conway*, 700 So.2d 324 (Miss. 1997), this Court heard a case on interlocutory appeal involving a medical malpractice suit which was filed in Hinds County. Even though the acts of the defendant hospital and doctors occurred in Forrest County, the plaintiffs argued that venue was proper in Hinds County because the defendants' negligence was first realized at the University Medical Center in Hinds County. The Hinds County Circuit Court agreed with the plaintiffs and denied the defendants' venue transfer motion. This Court concluded that, even though the plaintiffs' injuries became apparent in Hinds County, the injuries occurred in Forrest County where the doctors failed to properly diagnose. This Court further held that the manifestation of the plaintiffs' injuries in Hinds County did not constitute a substantial causative event necessary to establish venue there under Miss. Code Ann. § 11-11-3. Therefore, the circuit court order denying the change of venue was reversed.

¶39. *Conway* is analogous here. Even though Earwood's acts may have been realized by Reeves in his home in Covington County, the alleged economic injury to Reeves occurred and accrued in Hinds County when Earwood performed his services for Preston Reeves.

¶40. It is clear from the facts of this case and the holdings of this Court that the causes of action listed in Reeves's complaint occurred and accrued in Hinds County, not Covington County. For the foregoing reasons, I would reverse the order of the Covington County Circuit Court denying the change of venue

motion and remand this case to that court with directions that it promptly transfer this case to the Circuit Court of the First Judicial District of Hinds County.

¶41. Accordingly, I respectfully dissent.

**BANKS, P.J., AND EASLEY, J., JOIN THIS OPINION.**

1. The record contains only pages 1, 5, 12 and 14 of the Asset Purchase Agreement. Page 12 contains the following partial subsection:

> In the event that Closing does not take place on or before the Closing Date herein specified, Escrow Agent shall continue to hold the Escrow Deposit pending receipt of joint written instructions from TPE and Precision authorizing and directing the disbursement thereof. However, in the event that disbursement of the Escrow Deposit is not made on or before September 30, 1995, Escrow Agent shall either deliver the Escrow Deposit to Precision or tender same into the registry or custody of any court of competent jurisdiction that Escrow Agent may deem appropriate and, thereupon, the Escrow Agent shall be discharged from all further duties and obligations with respect to the Escrow Deposit.

2. At the close of the September 4,1998, hearing the trial judge announced from the bench his finding that "the cause of action accrued where [Reeves] suffered his damages, and ....the alleged conversion became complete when [Reeves} received a $100,000 check less than (sic) the $33,000." The judge further stated, "I'm reasonably comfortable in following this Forrest County General Hospital case [on which Earwood relied to argue that Hinds County was the proper venue] and standing by my initial judgment [that this case should not be transferred.]"