# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2001-CA-00892-COA

**DONALD LEE STONE**                                           **APPELLANT**

**v.**

**PHYLLIS JEAN STONE**                                          **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 03/20/2001 |
| TRIAL JUDGE: | HON. JOHN S. GRANT III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEBRA LYNN ALLEN |
| ATTORNEY FOR APPELLEE: | MARK A. CHINN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | JUDGMENT OF DIVORCE GRANTED TO WIFE ON GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT. |
| DISPOSITION: | AFFIRMED - 08/20/2002 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | 9/10/2002 |

BEFORE SOUTHWICK, P.J., LEE, AND MYERS, JJ.

LEE, J., FOR THE COURT:

## PROCEDURAL HISTORY

¶1. In June 2000, Phyllis Stone filed a complaint for divorce based on habitual cruel and inhuman treatment, and/or desertion, or in the alternative irreconcilable differences. Her husband, Donald Stone, filed an answer in August 2000, denying the allegations in support of the complaint. After a trial in March 2001, the chancellor granted the divorce as requested by Phyllis. Subsequently, Donald filed a motion to alter or amend judgment which was denied. Donald now appeals to this Court and argues (1) the overwhelming weight of the evidence did not support the awarding of a divorce on grounds of habitual cruel and inhuman treatment, and (2) that the chancellor erred in awarding to Phyllis certain interests in accounts acquired after the parties separated. We review the chancellor's decision and find no error; thus, we affirm.

## FACTS

¶2. Donald and Phyllis Stone were married on March 26, 1961. Two children were born to their union, both of whom were emancipated at the time of their parents' separation in November 1996. For a substantial period of time during the marriage Phyllis was a homemaker, but at the time of separation, Phyllis

worked as a medical technologist at the University Medical Center in Jackson, and Donald worked as a field representative for the U.S. Department of Agriculture. The couple accumulated a substantial amount of assets during the marriage.

## DISCUSSION OF THE ISSUES

### I. DID THE OVERWHELMING WEIGHT OF THE EVIDENCE SUPPORT AWARDING A DIVORCE ON GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?

¶3. With his first issue, Donald argues the evidence did not support the chancellor's awarding a divorce on grounds of habitual cruel and inhuman treatment. We first acknowledge our applicable standard of review in this case which requires that we view the facts of the divorce decree in a light most favorable to the appellee and not disturb the chancery court's decision unless we find it manifestly wrong or unsupported by substantial evidence. *Richard v. Richard*, 711 So. 2d 884 (¶13) (Miss. 1998). The required burden of proof is preponderance of the evidence. *Fisher v. Fisher*, 771 So. 2d 364 (¶9) (Miss. 2000).

¶4. We have more specifically been instructed concerning granting a divorce based on habitual cruel and inhuman treatment:

> Habitual cruel and inhuman treatment may be established only by a continuous course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, such conduct must be habitual, that is, done often enough or so continuously that it may reasonably be said to be a permanent condition. Our cases require more than mere unkindness, rudeness, or incompatibility to support the granting of a divorce on the grounds of cruel and inhuman treatment. On the other hand, habitual ill-founded accusations, threats and malicious sarcasm, insults and verbal abuse may cause such mental suffering as to destroy health and endanger the life of an innocent spouse.

*Holladay v. Holladay*, 776 So. 2d 662 (¶64) (Miss. 2000) (citation omitted).

¶5. The briefs in this case recount in great detail the evidence that was presented in this case. Also, in his opinion the chancellor went into great detail concerning the facts. After addressing various allegations Phyllis provided in support of her complaint, the chancellor concluded the following concerning Phyllis's entitlement to a divorce on the grounds of habitual cruel and inhuman treatment:

> The case before the Court is one where many instances of abuse by Mr. Stone towards Mrs. Stone occurred, most of which were verbal, including the following:

> 1. Repeated habitual screaming in Mrs. Stone's face by Mr. Stone;

> 2. Outbursts of temper by Mr. Stone when anger was physically displayed, including occasions when the daughter of the parties was pushed or grabbed by Mr. Stone, which incidents frightened Mrs. Stone and created in her a reasonable apprehension of danger;

> 3. Numerous displays of offensive vile language by Mr. Stone, including repeated use of the "F" word and taking the Lord's name in vain -- this in the presence of Mrs. Stone, a woman of delicacy of sentiment;

4. Mr. Stone's continued critical complaints over the years of Mrs. Stone's overweight;

5. Mr. Stone's failure to show any affection towards Mrs. Stone;

6. Repeated long periods of silence imposed by Mr. Stone when he would not speak to Mrs. Stone; and

7. Mr. Stone's constant criticism of Mrs. Stone over matters involving budget and finances.

All these instances, combined and considered in the totality of circumstances in a close case, constitute behavior that equates to habitual cruel and inhuman treatment.

The chancellor was presented substantial information and had the opportunity to weigh the credibility of each witness. Accordingly, we find no reason to recount all of the details in this opinion concerning the Stones's tumultuous marriage. In arriving at his conclusion that a divorce was warranted as well as in his other reasoning concerning equitable distribution a0nd whether or not to award alimony, the chancellor went into great detail concerning applicable factors from caselaw to consider and the facts as they applied to these factors. Looking to the facts in a light most favorable to the appellee, we find substantial evidence existed to support the chancellor's decision, and there was no error here.

## II. DID THE CHANCELLOR ERR IN AWARDING PHYLLIS A SHARE IN CERTAIN ACCOUNTS THOUGH CONTRIBUTIONS TO THESE ACCOUNTS WERE MADE SOLELY BY DONALD AFTER THE SEPARATION?

¶6. With this issue, Donald argues that he was the sole contributor to the Ameritrade account and to the USDA credit union account, both of which were not opened until after the separation. Donald cites *Godwin v. Godwin*, 758 So. 2d 384 (Miss. 1999), arguing that for valuation purposes, courts generally use a date that coincides with the end of the marriage, which he claims would be the date they separated. We do not read *Godwin* to apply to the Stones's case as Donald would suggest.

¶7. In *Godwin*, the couple separated, but a separate maintenance order was entered prior to the divorce, and the court said this served as a line of demarcation from which to value assets. *Godwin*, 758 So. 2d at (¶6). No such order exists in the present case. Although separated and living apart prior to the divorce, Donald and Phyllis did not seek any order of separate maintenance; thus, we find no clear line of demarcation from which we could determine when assets ceased being marital and when they took on a non-marital characteristic, as Donald would have us do. There is no merit to this issue.

¶8. **THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.**