## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2013-CA-00459-COA

SUSAN ILSLEY                                                                     APPELLANT

v.

TIMOTHY ILSLEY                                                                   APPELLEE

DATE OF JUDGMENT:                02/21/2013
TRIAL JUDGE:                     HON. CARTER O. BISE
COURT FROM WHICH APPEALED:       HARRISON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         JOHN ROBERT WHITE JR.
                                 PAMELA GUREN BACH
ATTORNEY FOR APPELLEE:           DEAN HOLLEMAN
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:         GRANTED WIFE'S REQUEST FOR A
                                 DIVORCE BASED ON UNCONDONED
                                 ADULTERY, DISTRIBUTED MARITAL
                                 PROPERTY, AND GRANTED WIFE LUMP-
                                 SUM ALIMONY OF $75,000
DISPOSITION:                     AFFIRMED - 10/07/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ROBERTS AND CARLTON, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.     On February 22, 2013, the Harrison County Chancery Court granted Susan Ilsley a

divorce from Timothy Ilsley on the ground of adultery.  The chancery court also distributed

the marital estate and awarded Susan lump-sum alimony of $75,000.  Susan filed the present

appeal, and she asks this Court to review the chancery court's valuation of certain stocks, the

valuation of her earning capacity, the amount and type of alimony awarded, and the denial

of her request for attorney's fees.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Susan and Timothy were married on April 8, 1978, and over their thirty-four-year marriage, they had two children. Both children are over the age of majority. Susan and Timothy's marital relationship deteriorated, and both parties agree that they have had no sexual relations since 2005. Timothy moved to Missouri in April 2006 for a job transfer with his employer, Isle of Capri Casinos, and he purchased a home; Susan remained in the marital home in Gulfport, Mississippi. She filed for divorce on October 19, 2011, on the grounds of habitual cruel and inhuman treatment, desertion, or irreconcilable differences. On the same day, she filed a motion for temporary relief. Susan filed an amended complaint for divorce on January 25, 2012, to add adultery as a ground for divorce. Timothy filed his answer and counter-complaint for an irreconcilable-differences divorce on March 15, 2012.

¶3. On May 9, 2012, the chancery court entered a temporary order granting each party exclusive use and possession of their respective homes, the contents of their homes, and their cars. Additionally, Timothy was ordered to continue to provide Susan with health insurance, to cover her out-of-pocket health expenses, and to pay her $6,000 per month in spousal support. Susan and Timothy were also ordered to mediate the case, with Timothy to pay the costs of mediation. After mediation was unsuccessful, the chancery court held a trial on August 20-21, 2012. At trial, only Susan and Timothy testified, with much testimony centering around Timothy's ING account that will be addressed in greater length later in this opinion.

¶4. Following the trial, the chancery court issued a final judgment of divorce on February 14, 2013; however, a corrected final judgment of divorce was entered on February 22, 2013,

2

after the initial judgment failed to grant the parties a divorce. Ultimately, Susan was granted a divorce from Timothy on the ground of adultery. The judgment of divorce also classified and divided the parties' assets and determined whether Susan was entitled to alimony and/or attorney's fees.

¶5.   The chancery court determined that the line of demarcation for the classification of marital or separate property was May 9, 2012, the date of the temporary order. Neither party had a separate estate, as all property accumulated was deemed to be marital property and subject to equitable distribution, including stocks held in an ING account that had not yet vested, but were given based on Timothy's past performance while employed at Isle of Capri. Their total marital estate was valued at $1,164,676. After performing a *Ferguson*-factor analysis[1] for the distribution of the marital property, the chancery court awarded Susan the home in Mississippi, including the contents of the home, the equity, and the remaining debt; Timothy was awarded the same regarding the Missouri home. They were also awarded their respective vehicles and the equity therein. The chancery court divided the parties' savings and retirement accounts and awarded each party half of each account, except for the stocks held in the ING account. In regard to the stocks in the ING account, the chancery court stated:

> [T]he only asset to be resolved [is] the disputed ING account, worth $193,497.00. Tim[othy] testif[ied] that he must retain 40% of the shares in the ING account. Further, he cannot dispose of the unvested and disputed 9,511 shares. That they will ultimately vest is also unknown. The [chancery c]ourt finds that the value of those vested shares is $143,089. [Susan and Timothy] will be entitled to each one-half of those shares. . . . The [chancery c]ourt further finds that [Timothy] will retain any and all interest in and to the 9,511 shares.

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

The chancery court directed that Timothy also receive $8,000 in debt: $4,000 from an SBA loan and $4,000 from a student loan on their son's behalf. After equitable distribution, the chancery court found that Susan's estate was valued at $631,341.50, and Timothy's estate was valued at $482,826.50.

¶6.    The chancery court next considered the alimony factors outlined in *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993).[2] The chancery court determined that Susan, at sixty years old, was capable of receiving a $50,000 salary even though she had been unemployed for the last sixteen months and that she will be eligible to receive approximately $866 per month in Social Security payments in January 2015. Fifty-eight-year-old Timothy had a gross income of $21,750 per month, with a net income of $12,456 per month. Neither party has significant health issues, but Susan would have to obtain health insurance at her own expense of approximately $500 per month. The chancery court held: "[C]onsidering the earning capacity of [Susan] and the division of retirement benefits, . . . lump-sum alimony in the amount of $75,000 . . . , payable in the amount of $2,500 . . . per month[, is] reasonable."

¶7.    Lastly, the chancery court denied Susan's request for attorney's fees "based upon its allocation of assets" and Susan's failure to establish a need for attorney's fees.

¶8.    Aggrieved by the chancery court's judgment, Susan filed her notice of appeal on March 18, 2013, and she raises the following four issues:

    I.    The chancellor committed manifest error in the valuation and classification of [the] Isle of Capri Casinos stock granted to Timothy .
          . . .

---

[2] Each factor will be detailed in greater length in the analysis section of this opinion.

4

II.     The chancellor's findings as to Susan['s] . . . earning capacity, used for purposes of both equitable distribution and alimony, are unsupported by the record.

III.    The chancellor failed to apply the correct legal standards in making his award of alimony[,] and his findings are unsupported by the evidence in the record, resulting in an award that is grossly inadequate and unfair.

IV.     The chancellor abused his discretion in denying Susan['s] request for attorney's fees and committed manifest error in failing to address the *McKee*[3] factors in making his decision.

## STANDARD OF REVIEW

¶9.     This Court has a limited standard of review in domestic-relations cases, and "[u]nder the standard of review utilized to review a [chancellor]'s findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the [chancellor's decision] on appeal unless [his] findings were manifestly wrong." *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010) (quoting *Duncan v. Duncan*, 774 So. 2d 418, 419 (¶4) (Miss. 2000)). "The distribution of marital assets in a divorce will be affirmed if 'it is supported by substantial credible evidence.'" *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009) (quoting *Bowen v. Bowen*, 982 So. 2d 385, 393-94 (¶32) (Miss. 2008)). Additionally, the decision of whether to award alimony, and if so, what amount, is left to the chancellor's discretion. *George v. George*, 22 So. 3d 424, 427 (¶4) (Miss. Ct. App. 2009) (citing *Lofton v. Lofton*, 924 So. 2d 596, 599 (¶12) (Miss. Ct. App. 2006)).

## ANALYSIS

I.      **ING Account**

_____

[3] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

5

¶10. Susan first argues that the chancery court erred in valuing and classifying stocks Timothy received as part of his compensation package from Isle of Capri. As part of his compensation package, Timothy was granted shares of stock each year that vest randomly over a three-year period and, once vested, are invested in an ING account. At trial, the parties stipulated that the number of vested shares in the ING account was 21,225 shares. In addition, there were 9,511 shares that granted after the date of the temporary order, but these shares had not yet vested. The chancery court found that these shares were marital, but awarded them to Timothy, as the shares had not yet vested. Timothy testified at trial that the value per share was approximately $7.06. This was the primary testimony and evidence presented at trial regarding the value per share. In his proposed findings of fact and conclusions of law, Timothy offered the value per share of $5.30. In its corrected final judgment of divorce, the chancery court found the total value of the ING account to be $193, 497, and the value of the vested shares to be $143,089. The chancery court did not include in its judgment what the total number of shares or the price per share was in determing the total values.

¶11. As explained above, the two pieces of evidence presented to the chancery court as to the price per share were $7.06 as testified to at trial, and $5.30 as contained in Timothy's proposed findings of fact and conclusions of law submitted several months after trial. "Where parties provide inadequate proof of an asset's value, a chancellor's valuation with 'some evidentiary support' will be upheld." *Dunn v. Dunn*, 911 So. 2d 591, 597 (¶17) (Miss. Ct. App. 2005) (quoting *Dunaway v. Dunaway*, 749 So. 2d 1112, 1121 (¶28) (Miss. Ct. App. 1999)). In *Dunaway*, we held:

6

> To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor. The chancellor appears to have fully explored the available proof and arrived at the best conclusions that he could, and we can discover no abuse of discretion in those efforts that would require us to reverse his valuation determinations.

*Dunaway*, 749 So. 2d at 1121 (¶28). Without having additional evidence provided by the parties, the chancery court was in the position to select a value for the shares and determined the total values for distribution. Additionally, the chancery court found that each party "will be entitled each to one-half of those [vested] shares." Thus, the actual value per share fluctuates based upon the market, so the total value of the shares would vary based upon the market price.

¶12. We find that the chancery court did not abuse its discretion.

## II.    Alimony[4]

¶13. After the chancery court distributes the marital assets, "[i]f there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). However, "[i]f the situation is such that an equitable division of marital property . . . leaves a deficit for one party, then alimony . . . should be considered." *Id.* After finding that Susan's marital estate was worth $631,341.50 and Timothy's estate was worth $482,826.50, the chancery court analyzed, using the factors from *Armstrong*, 618 So. 2d at 1280, whether alimony would be appropriate. The factors are as

---

[4] Susan raises the issue that the chancery court erred in finding that her earning capacity was $50,000. We will address this issue within our discussion of alimony.

follows:

1. The parties' expenses and income;

2. The parties' earning capacity and health;

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; and

12. Any other factor deemed by the court to be "just and equitable" in connection with the spousal support.

*Id.*

¶14. According to the chancery court, Timothy was fifty-eight years old at the time, in good health, and had a gross monthly income of $21,750 per month, with a net income of $12,456, and expenses of $7,481. For Susan, the chancery court found that she was sixty years old at the time, that she was also in good health, and that, before she was laid off, she had been employed for sixteen months earning approximately $50,000 per year. And even though she was unemployed due to a layoff, "she is capable of working for that amount of

8

salary." She will also be eligible for Social Security benefits of around $866 per month beginning in January 2015. The chancery court discounted Susan's claimed expenses from $6,655.26 per month to $4,000 per month. It noted that Timothy's earning capacity was much greater than Susan's. The chancery court next addressed that Susan would need to provide for her own health insurance at approximately $500 per month, according to Timothy. Susan's and Timothy's main obligations would be the debt on their respective homes. The chancery court also noted that Susan and Timothy's marriage was a long-term marriage of thirty-four years, that they had no minor children, and that Timothy was "substantially at fault" for the divorce. The chancery court acknowledged that prior to the separation, both parties enjoyed a high standard of living. If Susan was to receive alimony, it would be taxable as income to her. Lastly, the chancery court found neither party dissipated assets and there were no other factors to be considered.

¶15. After performing the *Armstrong* analysis, the chancery court found "that considering the earning capacity of [Susan] and the division of retirement benefits, . . . lump[-]sum alimony in the amount of $75,000, payable in the amount of $2,500 per month[, is] reasonable." We find that the chancery court's *Armstrong* analysis was properly conducted, as each factor was addressed thoroughly and the findings were supported by the evidence. Accordingly, we find that the chancery court did not abuse its discretion in awarding Susan $75,000 in lump-sum alimony.

¶16. This issue is without merit.

### III. Attorney's Fees

¶17. According to Susan, the chancery court erred in denying her request for attorney's

9

fees without first applying the *McKee* factors. In denying her request in the corrected judgment of divorce, the chancery court stated: "The [chancery c]ourt finds that, based upon its allocation of assets, and based upon the failure of [Susan] to establish a need for attorney[']s fees, that the same is denied." Susan claims that she is unable to pay her attorney's fees without liquidating a portion of her retirement or savings account, and that she will be "forced to 'rob Peter to pay Paul' to finance a divorce that the chancellor found to be [Timothy's] fault."

¶18. "Attorney's fees may only be awarded to a party who has shown an inability to pay his or her own fees. When awarding attorney's fees, a chancellor should make specific findings regarding the recipient's ability to pay." *Evans v. Evans*, 75 So. 3d 1083, 1089 (¶22) (Miss. Ct. App. 2011) (citations omitted). In *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), the Mississippi Supreme Court provided factors for consideration when determining the proper amount of attorney's fees to award:

> The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

¶19. While it is true that there is caselaw supporting Susan's position that she presented sufficient evidence of her inability to pay her fees based on her unemployment, a lack of a separate estate, the award of few liquid assets, and the shortfall already existing between her expenses and income, we note that "an award of attorney's fees in divorce cases is largely a matter entrusted to the sound discretion of the [chancery] court[.]" *Klauser v. Klauser*, 865

10

So. 2d 363, 368 (¶17) (Miss. Ct. App. 2003) (citing *Armstrong*, 618 So. 2d at 1282). "Absent [an] abuse of discretion, the [chancery court]'s decision in such matters will generally be upheld." *Id.*

¶20.    In *Pacheco v. Pacheco*, 770 So. 2d 1007, 1012-13 (¶¶26-28) (Miss. Ct. App. 2000), we affirmed the denial of attorney's fees because Mrs. Pacheco's property award enabled her to pay her attorney's fees. We do not find that the chancery court abused its discretion in denying Susan's request for attorney's fees. Susan received a sizable portion of the marital estate with which she may pay her attorney's fees; therefore, she failed to establish a need or inability to pay.

¶21.    This issue is without merit.

¶22.    **THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., NOT PARTICIPATING.**