LEE, C.J.,
FOR THE COURT:
¶1. In this,domestic-relations case, we must determine whether the chancellor properly granted Ursel Williams’s request for separate maintenance from her husband, William Williams (Wayne). We must also determine whether the chancellor erred in.denying Wayne’s request for a divorce from Ursel on the ground of habitual cruel and inhuman treatment. Finding no error, we affirm.
PROCEDURAL HISTORY
¶ 2. Ursel and Wayne married in October 1983. Wayne left the marital home in December 2013, which prompted Ursel to file a complaint in August 2014 for separate maintenance. In December 2014, the Lamar County Chancery Court entered a temporary support order awarding Ursel separate maintenance: Wayne then filed a counterclaim for divorce alleging habitual cruel and inhuman treatment. After a trial, the chancellor denied Wayne’s claim for divorce, and granted separate maintenance to Ursel. Wayne now appeals.
FACTS
¶ 3. Ursel and Wayne married in 1983, later settling in Jones County, Mississippi. Wayne is a disabled veteran. Wayne testi *1284 fied that he has a variety of illnesses and is in poor health. Ursel testified that she also has health issues. According to Ursel, her health renders her unable to work, but she has not been deemed medically disabled and has not actively sought employment in over six years. The parties admittedly have a tumultuous relationship—Wayne described their relationship as “roommates” who argued constantly.
¶ 4. Wayne testified that in March 2012, September 2012, August 2013, and December 2013, he had heart trouble while at the marital home, and that in each instance, Ursel refused to take him to the hospital. On three of those occasions, Wayne stated that he had to rely on others for transport to receive medical treatment, namely Debris Williams (no relation) and Michael Murdoch. In December 2013, however, Wayne testified that he had to drive himself on his motorcycle to the hospital in Hattiesburg, Mississippi, from the marital home in Moselle, Mississippi. Instead of returning home following his release from the hospital, Wayne instead moved into Debris’s home. Wayne testified that at one time he had a romantic relationship with Debris prior to his marriage to Ursel, but his current relationship with Debris was platonic. Ursel implied that Wayne was having an affair during the marriage.
STANDARD OF REVIEW
¶ 5. It is well settled that appellate courts are bound by a limited standard of review in domestic-relations matters. Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss. 1994). The Mississippi Supreme Court has held that a chancellor’s findings of fact “will generally not be overturned by this Court on appeal unless they are manifestly wrong.” Fancher v. Pell, 831 So.2d 1137, 1140 (¶ 15) (Miss. 2002) (citing Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989)). The chancellor must have been manifestly wrong or clearly erroneous, or have applied an erroneous legal standard for the findings to be overturned. Montgomery v. Montgomery, 759 So.2d 1238, 1240 (¶ 5) (Miss. 2000). “For questions of law, our standard of review is de novo.” Shoffner v. Shoffner, 909 So.2d 1245, 1249 (¶ 11) (Miss. Ct. App. 2005).
DISCUSSION
I. Separate Maintenance
¶ 6. Wayne asserts that the chancellor erred in awarding Ursel separate maintenance. During discovery, Wayne sent requests for admissions to Ursel, who failed to timely answer. As a result, the chancellor deemed the requests admitted. Because the requests were deemed admitted, Wayne argues that Ursel was prevented from proving the essential elements of her separate-maintenance claim. Wayne objected to this issue during trial when Ursel began giving contradictory testimony regarding Wayne’s refusal to support her. The chancellor allowed both parties to offer testimony regarding Wayne’s financial support.
A. Requests for Admissions
¶ 7. Rule 36 of the Mississippi Rules of Civil Procedure governs requests for admissions. The rule states, in pertinent part, that a matter will be deemed admitted if the party upon whom the request was served does not timely respond or file an objection addressed to the matter. M.R.C.P. 36(a). A timely response equates to one being made within thirty days. See id. Thereafter, the matter is conclusively established unless the court permits the admission’s withdrawal or amendment. M.R.C.P. 36(b). “A matter that is deemed admitted does not require further proof.” Locklear v. Sellers, 126 So.3d 978, 981 (¶ 7) (Miss. Ct. App. 2013). Still, while “Rule 36 is to be applied as written, ... ‘it is not intended to be applied in Draconian fashion.’ ” In re Dissolution of Marriage of Leverock & Hamby, *1285 23 So.3d 424, 432 (¶ 28) (Miss. 2009) (quoting DeBlanc v. Stancil, 814 So.2d 796, 801-02 (¶ 26) (Miss. 2002)). Specifically, “[a] certain amount of discretion is vested in the [chancellor] with respect to whether he or she will take matters as admitted.” Earwood v. Reeves, 798 So.2d 508, 514 (¶ 19) (Miss. 2001) (citation omitted).
¶8. The problem here is that the admissions produced contradictory results. Some of the requests asked Ursel to admit that: the separation was her fault, Wayne did not refuse to support her, and Wayne did not abandon her. However, another request asked Ursel to admit that “there is no significant conduct on [y]our part that negatively impacts the enjoyment of the marriage contract.” Ursel obviously admitted to this- statement in her untimely response. As such, we fail to see how the matter could be conclusively established as Wayne argues; thus, it was within the chancellor’s discretion to rely on the trial testimony to resolve any conflicts. Furthermore, the chancellor recognized that it was within her discretion to review the reason for Ursel’s failure to timely answer the requests for admissions. The chancellor found the delay of thirty-three days was not “critical,” and we can find no abuse of discretion in this instance. The dissent states that Wayne’s requests for admissions were deemed admitted for Ur-sel’s failure to timely reply and that the contradictory admission does not encompass the essential elements of Ursel’s separate-maintenance claim. However, the dissent concedes that it is within the chancellor’s discretion whether to take matters as admitted. In this instance, we cannot find error by the chancellor.
B. Amount of Separate Maintenance
¶9. In the alternative, Wayne argues that the chancellor erred in awarding $600 per month in separate maintenance to Ursel and ordering him to pay the mortgage of $365 per month. A chancellor may award separate maintenance when (1) the parties have separated without fault by the wife and (2) the husband has willfully abandoned the wife and refused to support her. Jackson v. Jackson, 114 So.3d 768, 775 (¶ 17) (Miss. Ct. App. 2013). “[A] wife is not required to be totally blameless to allow an award of separate maintenance, ‘but her (mis)conduct must not have materially contributed to the separation.’ ” Daigle v. Daigle, 626 So.2d 140, 145 (Miss. 1993) (quoting Lynch v. Lynch, 616 So.2d 294, 296 (Miss. 1993)). There are six factors a chancellor should consider in determining the amount of separate maintenance to be awarded: (1) the parties’ health; (2) the parties’ combined earning capacity; (3) the reasonable needs of the spouse requesting separate maintenance and any children; (4) the necessary living expenses of the payor; (5) the fact that the payee spouse has use of the marital home and furnishings; and (6) any other pertinent facts. Id.
¶ 10. Although the chancellor did not explicitly list each factor, her findings indicate that she did consider them. The chancellor reviewed the parties’ financial statuses, including their earning capacity, Wayne’s living expenses, and Ursel’s financial needs. The chancellor noted that Wayne admitted the following: he willfully abandoned the marital home, Ursel had asked him to return to the marital home, and he adamantly refused to return. The chancellor concluded that Wayne’s support of Ursel since the separation had been “haphazard” at best, even after the temporary support order was entered in December 2014. Although admitting that they fought constantly, Ursel testified that she loved Wayne and wanted him to return to the marital home. Ursel further testified that Wayne was not supporting her financially, that he had “changed the bank accounts and left me no money, no nothing, *1286 and I couldn’t pay the mortgage.” Ursel stated she was unable ■ to work and received help with her groceries and gasoline from local charities. Ursel testified as follows:
I have bad asthma, ... bad arthritis, ... and my knee—my meniscus was torn and ... I [am] supposed to have [a] knee replacement. I can’t go nowhere; I can’t go to the hospital. I have nobody to take care of me. I have no friends. Nobody. And, you know, when he left me all the time on the weekends alone, I got upset and I moved to my bedroom .... I feel safe in the bedroom, I have my .TV, my dog,.you know. I had nothing else no. more. When [Wayne] was home, he sleep[s] until three or four o’clock in the afternoon.
¶ 11. The chancellor clearly found Ur-sel’s testimony more credible than Wayne’s testimony. In this instance, we cannot find the chancellor was manifestly wrong or clearly erroneous in awarding Ursel separate maintenance.
II, Habitual Cruel and Inhuman Treatment
¶ 12. Wayne asserts that the chancellor erred in denying his claim for divorce because he proved by a preponderance of the evidence habitual cruel and inhuman treatment by Ursel. This ground for divorce is established by .evidence that the conduct of the spouse either:
(1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Rakestraw v. Rakestraw, 717 So.2d 1284, 1287 (¶ 8) (Miss. Ct. App. 1998)(citation omitted). Here, Wayne was required to prove habitual cruel and inhuman treatment by a preponderance of the evidence. Shavers v. Shavers, 982 So.2d 397, 403 (¶ 35) (Miss. 2008). Furthermore, “[t]he party alleging cruel and 'inhuman treatment typically must corroborate the testimony.” Id.
¶ 13. The record clearly indicates that the parties did not get along—Wayne described their relationship as “roommates” who argued constantly—but this is not enough to meet the burden required for a divorce based on habitual cruel and inhuman treatment. “Our cases require more than mere unkindness, rudeness, or incompatibility to support the granting of a divorce on the grounds of cruel and inhuman treatment.” Stone v. Stone, 824 So.2d 645, 646 (¶ 4) (Miss. Ct. App. 2002). In any event, the conduct generally “must be routine and continuous.” Lomax v. Lomax, 172 So.3d 1258, 1261 (¶ 6) (Miss. Ct. App. 2015); see also Burnett v. Burnett, 271 So.2d 90, 92 (Miss. 1972) (The “conduct must be habitual, that is, done so often, or continued so long, that its recurrence may be reasonably expected whenever occasion or opportunity presents itself.”).
¶ 14. Wayne’s testimony’ focused on four occasions in the two years prior to the couple’s separation when he alleged Ursel refused to take him to the hospital: in March 2012; September 2012; August 2013; and December 2013.[1] According to Wayne, he suffered from a litany of medical issues, and her refusal to take him to the hospital on these occasions created an apprehension of danger. Wayne said that in December 2013, he asked Ursel for a ride to the hospital and she allegedly told him, “You can sit there and die, you *1287 S.O.B.” Ursel admittedly refused to take Wayne to the hospital on one occasion, although the testimony is not clear as to when this occurred. She testified that he had been gone all weekend, insinuating that Wayne was with another woman. Ur-sel stated that she told him to find someone else to drive him, and Wayne! did so. On the other three occasions, Ursel testified that Wayne never asked for her help. Ursel stated she was unable to drive him to the hospital in August 2013 due to a broken arm. Wayne also admitted that since 2000, he often had to be taken to the hospital due to his poor health, but that other than the four times previously mentioned, Ursel always drove him to the hospital.
¶ 15. “This Court requires corroboration of the offensive conduct complained of by the moving party when seeking a divorce based on the ground of habitual cruel and inhuman treatment, éx-cept in unusual cases such as isolation.” Jones v. Jones, 43 So.3d 465, 478 (¶ 30) (Miss. Ct. App. 2009). Additionally,' “the corroborating evidence need not be sufficient in itself to establish the ground,” but rather “need only provide enough supporting facts for a court to conclude that the plaintiffs testimony is true.” Deborah H. Bell, Bell on Mississippi Family Law § 4.02[8][d], at 74 (2005). Wayne called two corroborating witnesses—Michael and Deloris.
¶ 16. Michael, Wayne’s friend, testified that he took Wayne to the hospital two times in 2012. On one of these occasions, Michael stated that he was at Wayne’s house when Wayne complained of chest pain. Michael said Wayne asked for a ride to the hospital. Michael testified that he did not see Ursel at the house either time he drove Wayne to the hospital, so he was unable to corroborate Wayne’s testimony.
II17. Deloris testified that she drove Wayne to the hospital in August- 2013. According to Deloris, Wayne told her Ur-sel would- not drive him to the hospital. When Deloris arrived, she said Ursel told Wayne, “I hope you die.” Deloris did not hear Ursel refuse to drive Wayne to the hospital. Deloris testified to the couple’s contentious relationship, admitting that she had heard both Wayne and Ursel call each other derogatory names. After leaving the marital home, Wayne began renting a room in Debris’s house. Although Wayne-and Deloris ■ admittedly had a romantic relationship prior to Wayne’s- marriage to Ursel, both stated that they were platonic roommates.
¶ 18. The dissent contends that Wayne met his burden of proof since the testimó-ny of both Ursel and Deloris corroborated his claim. In regard to Ursel, the dissent claims she admitted to refusing to transport Wayne to the hospital in August 2013, thus corroborating Wayne’s testimony on that one occasion. However, the testimony was that Ursel could not physically drive him to the hospital due to a broken arm, not that Ursel refused to drive him. Since much of Wayne’s testimony was confusing in regard to the material facts, we cannot find the chancellor erred in finding Ursel’s testimony more credible in this instance. In regard to Deloris, her testimony only corroborates the parties’ contentious relationship. Her testimony regarding the August 2013 trip to the hospital is based upon Wayne’s statement that Ursel would not drive him to the hospital—Deloris did not hear Ursel refuse. And much of Debris’s testimony was unclear as to the- timing of these incidents. \
¶ 19. Our courts have consistently refused to sanction divorces based on habitual cruel and inhuman treatment where much more serious conduct occurred. See Stennis v. Stennis, 464 So.2d 1161, 1162 (Miss. 1985) (insufficient evidence of habitual cruel and inhuman treatment where a *1288 husband slapped his wife, put her in a headlock, and washed her mouth out with soap); Gwathney v. Gwathney, 208 So.3d 1087, 1090 (¶ 8) (Miss. Ct. App. 2017) (affirmed a chancellor’s finding that a wife lacked sufficient corroborating evidence to prove her husband physically abused her); Reed v. Reed, 839 So.2d 565, 571 (¶ 26) (Miss. Ct. App. 2003) (reversed a chancellor’s decision to grant a divorce, notwithstanding physical violence and threats); Wilbourne v. Wilbourne, 748 So.2d 184, 187 (¶ 5) (Miss. Ct. App. 2000) (affirmed a chancellor’s denial of a divorce despite occasional physical violence, finding the evidence insufficient to prove habitual cruel and inhuman treatment).
¶ 20. The chancellor found Wayne’s testimony was not credible, and the testimony of his corroborating witnesses was inconsistent at best. The chancellor believed Wayne’s apprehension was due to his poor health and marital strife, not due to Ur-sel’s purported refusal to drive him to the hospital. As previously stated, “mere unkindness, rudeness, or incompatibility” is not enough to support a cruel-and-inhuman-treatment divorce. Stone, 824 So.2d at 646 (¶ 4). Keeping in mind our limited standard of review, we cannot find the chancellor’s decision to deny Wayne a divorce was manifestly wrong or clearly erroneous.
¶ 21. AFFIRMED.
IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WILSON, J. FAIR, J., NOT PARTICIPATING.

. Wayne produced two hospital bills as evidence; however, both bills are for hospital services rendered on August 4, 2015—almost two years after Wayne left the marital home.