# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01801-COA

**MARSHA P. NELSON**                                                                          **APPELLANT**

**v.**

**JAMES A. NELSON**                                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/22/2016 |
| TRIAL JUDGE: | HON. SANFORD R. STECKLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | SHANNON MICHELLE JONES ASHLEY D. JONES |
| ATTORNEY FOR APPELLEE: | NITA LOUISE CHASE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/20/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., WESTBROOKS AND TINDELL, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Marsha P. Nelson appeals the November 22, 2016 judgment and the December 9, 2016 "qualifying court order"[1] of the Chancery Court of Harrison County. Finding no error in the chancery court's ruling after a review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     James A. Nelson and Marsha married on August 4, 1991. During their marriage, they had two daughters—Jasha and Jada.[2] Around November 2008, the parties separated, and on

---

[1] This order is substantively a "Qualified Domestic Relations Order."

[2] To protect the identity of the minor child, we have chosen to refer to her as "Jada."

April 6, 2010, their divorce was granted on the ground of irreconcilable differences. The court also approved a property settlement agreement for both James and Marsha. Less than a year later, the parties began filing motions, petitions, and complaints against each other for various reasons due to monetary issues arising from the property settlement agreement.

¶3. On February 25, 2011, Marsha filed a motion for modification or clarification of judgment of the divorce and property settlement agreement. Marsha alleged that she filed her motion because James refused to cooperate in establishing the correct percentage of the retirement funds that she was to receive. After various attempts to obtain service on James, Marsha succeeded in obtaining a Rule 81[3] summons on him in August 2011. This motion is what seemingly triggered the litigation battle between James and Marsha that lasted from 2011 through 2016.

¶4. On November 4, 2011, James responded with an answer and affirmative defenses. He also filed a counterclaim alleging that Marsha had failed and refused to comply with the court's April 6, 2010 judgment. James averred that Marsha should be held in willful, wanton, and contumacious contempt for her refusal to provide him with one of the Lladros figurines and a stereo stand; failure to pay any of the expenses associated with the parties' business; failure to return the approximate sum of four thousand dollars ($4,000) from the business account she used for her own personal use; failure to disclose the status of the parties' joint 2009 federal and state tax refund; failure to pay the outstanding 2009 tax

---

[3] M.R.C.P. 81.

2

liability, plus penalties, if any; failure to equally share any tax refund for 2009, plus interest; and failure to compensate him two thousand five hundred fifty dollars ($2,550) representing his equity in the sale of one of their rental homes, as well as one-half (1/2) of the amount he would have received if the Martin Luther King Blvd. property were sold at the time of an offer.

¶5.    In an attempt to resolve the issues filed by the parties, several conferences and hearings were held in November 2011, August 2012, November 2012, March 2013, August 2013, November 2013, April 2014, April 2015, and September 2016.  During these proceedings, several of the issues from both parties were resolved—including what percentage of James's retirement was to be paid to Marsha.  A bifurcated trial was held to adjudicate the remaining unresolved issues—the first part in December 2014 and the second part in October 2015.

¶6.    On November 22, 2016, the chancery court entered a judgment of modification and contempt.[4]  The following applicable excerpts are from the chancellor's findings:

> During the trial, Marsha withdrew $5,150 from the business account for personal use.  Because of the withdrawals, James was awarded $2,575—half of the money Marsha withdrew.  James also paid a total of $12,150.86 in expenses for Nelson's Philly Cheese Steak, and the chancellor ordered Marsha to pay $6,075.43 for her half of those expenses.  The chancellor ordered that both Thrift Savings Plans should be equally split.  As a result, James was awarded $13,073.54.  James was also awarded $1,547.22 for the half of the 2009 state and federal tax refund that he did not receive from Marsha.

---

[4] The November 2016 order also referenced the other judgments of the court issued in December 2015 and June 2016.

3

¶7.    The qualifying order issued by the chancellor on December 9, 2016, accomplished the split of the retirement savings of $13,073.54 ordered on June 29, 2016. James was also awarded retroactive child support in the amount of $7,530 for the period of February 2013 to November 2013; and $3,135 for overpayment of child support for October 2012 to November 2013. The court also awarded James $12,000 in attorney's fees. James was also granted control over the distribution of money in Jasha's college fund until the month of her college graduation. Marsha was awarded $3,657.26 in business expenses that she incurred and $19,441 for the division of military benefits both she and James had accrued from 2011-2013.

¶8.    Marsha now asserts that the chancery court erred in the calculation of child support, in awarding James $13,073.54 from her thrift savings plan, and in awarding James the $12,000 in attorney's fees. Marsha timely appeals.

**STANDARD OF REVIEW**

¶9.    This Court has a limited standard of review in domestic-relations cases, and "under the standard of review utilized to review a chancellor's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the chancellor's decision on appeal unless his findings were manifestly wrong." *Ilsley v. Ilsley*, 160 So. 3d 1177, 1181 (¶9) (Miss. Ct. App. 2014). Furthermore, "[t]he distribution of marital assets in a divorce will be affirmed 'if it is supported by substantial credible evidence.'" *Id*. "The chancellor must have been manifestly wrong or clearly erroneous, or have applied an

erroneous legal standard for the findings to be overturned." *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶5) (Miss. Ct. App. 2017). "For questions of law, our standard of review is de novo." *Id.*

## DISCUSSION

### I. Whether the chancery court erred in awarding James retroactive child support and reimbursement of child support.

¶10. Marsha asserts that the chancery court erred in its calculations of child support in awarding James $7,530 in retroactive child support and $3,135 in overpayment of child support. She asserts that the child support repayment should go directly to Jasha and that the court should not have awarded overpayment of child support since James did not specifically request it in his motion. We disagree.

¶11. Pursuant to the judgment of the divorce, James was to pay $570 in child support per month for both children. In October 2012, Jasha moved in with James, and he continued to pay child support for both children. James filed a complaint for modification in February 2013, requesting relief for retroactive child support and mentioning overpayment throughout the proceedings, specifically in August 2013, December 2014, and October 2015. The temporary order entered in November 2013 called for both James and Marsha to pay Jasha directly in the amount of $753 because she was leaving for college. However, evidence was presented to the court that showed Jasha had not gone to college yet, and that between October 2012 and November 2013 Jasha was living with James and he was financially supporting her.

5

¶12. A trial court may award retroactive child support dating back to the time in which the motion for modification is filed. *See Lawrence v. Lawrence*, 574 So. 2d 1376, 1384 (Miss. 1991). But, Marsha asserts that the monetary amount due should be paid directly to Jasha and not James. The chancellor weighed the evidence and testimony that Jasha was living with and being taken care of by James from October 2012 to November 2013. The chancellor decided that the temporary order should be changed to a permanent order that called for James to be paid directly. This Court has previously held that

> the chancellor, being the only one to hear the testimony of the witnesses and observe their demeanor, is in the best position to judge their credibility. Moreover, since the chancellor is best able to determine the credibility of the witness' testimony, it is not [an appellate court's] province to undermine the chancellor's authority by replacing the chancellor's judgment with our own.

*LeBlanc v. Andrews*, 931 So. 2d 683, 688-89 (¶17) (Miss. Ct. App. 2006) (citations and internal quotation marks omitted).

¶13. Therefore, we find that the issue regarding retroactive payment is meritless. Marsha also argues that James is not entitled to overpayment of child support because he did not request it in his motion. "Mississippi is a 'notice pleading' state." *Bluewater Logistics LLC v. Williford*, 55 So. 3d 148, 157 (¶35) (Miss. 2011). "Under Rule 8, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'a demand' for judgment." *Id*. at 157-58 (¶35). "No technical forms of pleading or motions are required." *Id.* at 158 (¶35).

¶14. James's overpayment was mentioned specifically in August 2013, December 2014,

and October 2015. At the August 2013 conference, the chancellor decided that James was entitled to some repayment, specifically six percent of what he overpaid. During the trial in December 2014, the chancellor stated that James should get fifty percent of what he paid in child support at the time that Jasha moved in with him. Also during that time, in section twenty of the judgment of modification and contempt, Marsha agreed that James should either be paid the entire amount that he overpaid or he should be given a credit in the amount that he overpaid. Likewise, in October 2015, Marsha testified at trial that the amount that James should receive from overpaying may be fourteen percent but she was not sure if he should get fifty percent. Therefore, in making the final determination, the chancellor took into account all of the claims from both parties and decided that James should be repaid for paying child support for two children when one of those children lived with him.

¶15. Accordingly, the chancery court was not manifestly wrong in awarding James retroactive child support. This issue is meritless.

> **II. Whether the chancery court erred in awarding James $13,073.54 from Marsha's thrift savings plan.**

¶16. Marsha asserts the chancery court erred in awarding James money from her thrift savings plan because the award unjustly enriched James. Marsha argues that James waived the division of the thrift savings plan in their property settlement agreement.

¶17. During the hearing in November 2012, the chancellor noted that both James and Marsha had a thrift savings plan at the time of their divorce. James disclosed the amount in

7

his thrift saving plan on his Rule 8.05 financial statement[5] filed in 2009. Marsha, however, did not submit the amount in her thrift savings plan—even though James filed a motion to compel requesting "any and all [of Marsha's] supporting documentation required by Rule 8.05." During the conference on the motion held November 15, 2012, the chancellor ordered Marsha to answer the discovery "totally, completely, and honestly."

¶18.    James also testified that he knew of Marsha's thrift savings plan; however, he argues that he did not knowingly and voluntarily waive the money in Marsha's thrift savings plan, because the amount of Marsha's thrift savings plan was not disclosed. Marsha admitted that she did not disclose the amount of her plan in the divorce—even though the amount was requested when they disclosed their Rule 8.05 financial statements to the court. James also asserted that his waiver of the division of the thrift savings plan was neither knowing nor voluntary, because Marsha omitted the amount in her plan before they signed the property settlement agreement. The Mississippi Supreme Court has held that "the intentional filing of a substantially false Rule 8.05 financial statement is misconduct that rises above mere nondisclosure of material facts to an adverse party." *Trim v. Trim*, 33 So. 3d 471, 478 (¶16) (Miss. 2010).

¶19.    Marsha maintains that James knew that she did not disclose the amount of her thrift savings plan before he signed the property settlement agreement. But, James informed the chancellor that he would not have agreed to give Marsha part of his retirement income had

---

    [5] Uniform Chancery Court Rule 8.05.

8

he known the amount of Marsha's thrift savings plan. Moreover, James filed a motion to compel to order Marsha to provide full and complete responses. The chancellor also noted that Marsha was given ample opportunities to disclose the amount of her thrift savings plan and did not. The chancellor also found that Marsha never had any intentions of disclosing the thrift savings plan because she was not required to do so. "The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." *Id*. at 479 (¶20). The chancellor found that clear and convincing evidence demonstrated that Marsha intentionally had filed a false Rule 8.05 financial statement that did not include the value of her thrift savings plan. As a result, the chancellor found that Marsha's omission amounted to willful and contumacious contempt.

¶20. Accordingly, we find that the chancery court did not err in awarding James $13,073.54 from Marsha's thrift savings plan and find that the property settlement agreement was subject to modification on this issue.

### III. Whether the chancery court erred in awarding James attorney's fees.

¶21. The record reflects that the chancery court awarded James $12,000 of the $24,000 he sought from Marsha in attorney's fees. Marsha asserts that the court erroneously awarded James attorney's fees.

¶22. The chancellor found Marsha in contempt for failing to cooperate in the sale of the MLK property, withdrawing funds from the jointly owned business account for her own

personal use, and intentionally failing to disclose her thrift savings plan in her Rule 8.05 financial statement. The chancellor noted that James actually hired an attorney to determine whether Marsha's actions were willful and "contumacious" contempt. "In contempt actions, attorney's fees are awarded to make the plaintiff whole." *Vincent v. Rickman*, 167 So. 3d 245, 249 (¶14) (Miss. Ct. App. 2015). "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Id*. at 249-50 (¶14). Moreover, "[t]his Court will affirm the factual findings of the chancellor in civil-contempt cases unless manifest error is present." *Id*. at 250 (¶14).

¶23. After review of the record, we find no error in the court's award of attorney's fees to James. "Absent [an] abuse of discretion, the chancery court's decision in such matters will generally be upheld." *Ilsley*, 160 So. 3d at 1183-84 (¶19). The chancellor also calculated the attorney's fees using the factors set out in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). Accordingly, this issue is meritless.

¶24. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND TINDELL, JJ., CONCUR. WILSON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**