# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00119-COA

**MORGAN KELLEY**                                                        **APPELLANT**

**v.**

**KASSI ZITZELBERGER F/K/A KASSI**                          **APPELLEE**
**ZITZELBERGER KELLEY**

DATE OF JUDGMENT:            08/07/2020
TRIAL JUDGE:                        HON. MARK ANTHONY MAPLES
COURT FROM WHICH APPEALED:   JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      BRENT M. BICKHAM
ATTORNEY FOR APPELLEE:       DIANNE HERMAN ELLIS
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 06/21/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     This case involves modification of child support and visitation for K.K., the daughter of Morgan Kelley and Kassi Zitzelberger.  At the time of trial in 2020, K.K. was sixteen years old.  Upon retirement from the United States Marine Corps, Morgan requested a reduction in child support and a modification of visitation.  Kassi counterclaimed for past-due child support among other matters.  During pendency of the case, Morgan re-located from Gretna, Louisiana, to New Jersey.  Kassi and K.K. reside in Jackson County, Mississippi.  Both Morgan and Kassi have remarried.

¶2.     The parties agreed to conferring jurisdiction in Mississippi of a 2012 divorce judgment in California. The Jackson County Chancery Court found evidence that the parties

had an oral agreement to modify certain terms of their original divorce agreement, such as reducing Morgan's monthly obligations for child support and payment of expenses for K.K.'s cheerleading/dance classes and orthodontia. The chancery court found these "self-help modifications" were unenforceable. Morgan's request for a reduction in child support was denied, returning it to the original amount of $800 per month. In addition, the chancellor ordered Morgan to pay his child support arrearage of $8,750 at the rate of $200 per month. Regarding the previously incurred cheerleading/dance and orthodontia expenses, the court found "neither party should owe the other party for any costs and/or credits." The court also fashioned a visitation schedule for K.K. and found neither party in contempt of prior orders or judgments.

¶3. On appeal, Morgan argues the chancellor erred in refusing to reduce the California child support obligation and declining to apply Mississippi statutory guidelines to his military retirement income. Further, he claims the chancellor should have credited his payments for cheerleading against his child support arrearage. Finally, Morgan contends the chancellor improperly modified visitation by failing to accommodate his relocation to New Jersey. Finding no error in the chancellor's exercise of discretion, we affirm the chancery court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶4. Morgan and Kassi were married in 2005, and their daughter, K.K., had been born in 2004. The parties divorced in California in 2012. Kassi and her husband live in Ocean Springs, Mississippi, with K.K. and Kassi's two other children. Morgan and his wife,

2

Doreen, live in Glassboro, New Jersey, with Doreen's twin sixteen-year-old daughters.

¶5.    In April 2019, Morgan filed a petition to reduce his child support due to his mandatory retirement from the Marines after twenty years of service.[1] Upon retirement, in November 2019, Morgan's net monthly military pay went from approximately $5,000 per month to $1,736.66 per month. Morgan's and Doreen's four-bedroom residence in New Jersey is valued at $315,000 with a monthly note of $1,442.43 and an outstanding mortgage balance of approximately $290,000. Morgan and Doreen own a 2018 Nissan Titan with a loan balance of $26,950.74. Morgan owns a 2019 Nissan Altima with a loan balance of $22,658.36. Morgan and Doreen pay approximately $850 per month for both vehicles. On his Rule 8.05 financial statement, UCCR 8.05, Morgan listed numerous expenses paid by Doreen, whose monthly gross income is $3,700. Kassi reported a monthly net income of $6,596.86.

¶6.    Morgan also sought to modify visitation from the original divorce decree when he lived in Texas and Kassi lived in California but was moving to Indiana. At the time he filed his petition for modification, Morgan lived in Gretna, and Kassi resided on the Mississippi Gulf Coast. Due to the proximity of the parties, Morgan requested an amended visitation schedule. However, by the time of trial, Morgan had voluntarily moved from Gretna to New Jersey, retired from the military, and intended either to retire permanently from work at the age of forty or attend college.

---

[1] Morgan previously had attempted to modify his child support and other financial support of K.K. in Indiana in August 2012, less than one year after the entry of the California divorce decree. The Indiana court denied his request.

3

¶7.    Morgan was unsuccessful in finding employment from the time he moved to New Jersey in November 2019 until trial in June 2020.  He claims this was partly due to the onset of the COVID-19 pandemic in 2020.  At that time, he had completed some college courses but did not have a degree.  However, Morgan was eligible to attend college on the "G.I. Bill," which would pay his college expenses and provide him with a monthly stipend of approximately $1,600.  At the time of trial, Morgan had yet to enroll in college and was unsure if he would use his G.I. Bill on his college courses, even though they would be free. He was interested in taking classes to obtain a degree in disaster preparedness and emergency management at a local university for a job in that field with a government agency.[2]  Morgan testified that in 2006 he was diagnosed with PTSD after his first tour of duty in Iraq.  He has attended group therapy and takes medication; however, he has never been declared disabled to work due to the disorder.

¶8.    Around 2014, Morgan and Kassi orally agreed to reduce Morgan's child support payments from $800 to $550 per month if Morgan would regularly visit K.K., which he did for about six months in 2015.  However, the parties never sought or obtained a court order to reduce child support.  Morgan described his current relationship with K.K. as "strained." He claimed Kassi prevented him from regularly visiting the child.

¶9.    Kassi counterclaimed for past-due child support in the amount of $8,750, which she calculated was the back-owed child support because Morgan did not visit the child as agreed but continued to pay only $550 a month in child support.  She also requested that the parties

_____

[2] In the fall of 2020, Morgan started college courses in New Jersey as a junior.

4

evenly divide the cost of extracurricular activities and that Morgan use his G.I. Bill for K.K.'s college education. The parties agreed to attend their trial via Zoom in June 2020 due to the COVID-19 outbreak.

## STANDARD OF REVIEW

¶10. In domestic relations cases, this Court has a limited standard of review. We "will not overturn the chancellor's decision on appeal unless his findings were manifestly wrong." *Nelson v. Nelson*, 271 So. 3d 613, 616 (¶9) (Miss. Ct. App. 2018) (quoting *Ilsley v. Ilsley*, 160 So. 3d 1177, 1181 (¶9) (Miss. Ct. App. 2014)). "Chancellors are given broad discretion in the area of modification of child support." *Bell v. Bell*, 206 So. 3d 1254, 1258 (¶6) (Miss. Ct. App. 2016). "The chancellor must have been manifestly wrong or clearly erroneous, or have applied an erroneous legal standard for the findings to be overturned." *Nelson*, 271 So. 3d at 617 (¶9) (quoting *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶5) (Miss. Ct. App. 2017)). "For questions of law, our standard of review is de novo." *Id.*

## ANALYSIS

### I. Modification of Child Support

¶11. Morgan argues the chancery court committed manifest error in denying his petition to reduce his child support of $800 per month. First, he claims that the chancellor should have used Mississippi's child support guidelines to modify his child support since both Kassi and K.K. now reside in Mississippi. Alternatively, he argues his mandatory retirement from the Marines is a material change in circumstances warranting a reduction in his child support.

5

¶12. Morgan argues that under *Cadigan v. Sullivan*, 301 So. 3d 779 (Miss. Ct. App. 2020), there is no need to prove a material change in circumstances for interjurisdictional support cases; "only a request to conform child support to Mississippi guidelines is sufficient when a child resides here." However, *Cadigan* does not stand for this proposition. In *Cadigan*, unlike here, the petitioner did not request a modification of child support because she had a reduction in income; she requested the modification so the amount of her child support would conform to Mississippi's statutory guidelines. *Id.* at 785 (¶28). This argument is without merit.

¶13. In the alternative, Morgan argues that his mandatory retirement from the Marines is a material change in circumstances. Morgan notes that as of November 2019, his net income was reduced from approximately $5,000 per month to $1,736.66 per month, while Kassi's monthly gross income is $9,443.20 per month, and her monthly net income is $6,596.86. Additionally, Morgan contends that the chancellor improperly disregarded his PTSD diagnosis in 2006, which resulted from his combat tour in Iraq.

¶14. "A child support award can be altered if it can be shown that there has been 'a substantial or material change in the circumstances of one or more of the interested parties . . . arising subsequent to the entry of the decree to be modified.'" *Caldwell v. Caldwell*, 579 So. 2d 543, 547 (Miss. 1991) (quoting *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983)). Some of the factors considered in determining whether a material change has taken place include:

> (1) increased needs caused by advanced age and maturity of the children (2) increase in expenses, and (3) inflation factor. Other factors include (4) the

6

relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence.

*Id.* (quoting *Adams v. Adams*, 467 So. 2d 211, 215 (Miss. 1985)). Further, the material change must be unforeseeable at the time of the initial decree, and the change must not be caused by the willful or bad faith actions of the moving party. *Magee v. Magee*, 755 So. 2d 1057, 1059-60 (¶9) (Miss. 2000) (citing *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995)).

¶15.    The chancellor did not abuse his discretion in denying Morgan's request for child support reduction. The original California judgment was entered in 2012. At the time of trial in 2020, the parties' daughter had numerous expenses. She was a junior in high school and drove her own vehicle, which had a monthly loan payment. Morgan was a forty-year-old individual who was voluntarily considering not seeking reemployment after his mandatory retirement from the military. It is unclear from the record whether Morgan's mandatory retirement was unforeseeable at the time of the original divorce in 2012. However, Morgan offered no proof he was unable to work or earn a similar income. His PTSD diagnosis never resulted in a "disability" regarding work, and he testified he had none. In fact, after the diagnosis, Morgan completed one tour with the Marines and two deployments, as well as continuing his duties with the Marines for thirteen more years.

¶16.    The chancellor did not directly address the impact of Morgan's mandatory military

7

retirement in the analysis of his ability to pay child support, except that Morgan had been unsuccessful in finding a job since his retirement. However, the chancellor found that Morgan had the ability to work: he was "an able-bodied man capable of earning additional income to assist in supporting his [sixteen] year old daughter."[3] The chancellor also expressed skepticism in Morgan's claimed inability to pay support, citing *Dunn v. Dunn*, 695 So. 2d 1152, 1156-57 (Miss. 1997), for the proposition that when a chancellor is not convinced of the honesty or veracity of a parent concerning his ability to abide by his financial obligations, the chancellor may factor this skepticism into the equation in determining the amount of child support. We note that in reducing child support, "[a] payor who reports a reduction in income must show a corresponding reduction in standard of living." Deborah H. Bell, *Bell on Mississippi Family Law* § 13.11[7][a], at 546-47 (3d ed. 2020) (citing *Holcombe v. Holcombe*, 813 So. 2d 700, 705-06 (¶¶25, 32) (Miss. 2002) (chancellor refused to modify alimony where husband purchased new automobile)). Here the evidence showed an increase in Morgan's standard of living upon retirement.

¶17. Morgan testified he tried looking for employment before he retired without success. He also looked for jobs in New Jersey, but COVID-19 occurred. He then decided it may be best to return to school but testified that he was choosing not to use his G.I. Bill for college, and instead he would finance his education through student loans and financial aid. The G.I.

---

[3] While not directly on point because the military retirement was involuntary, in *Leiden v. Leiden*, 902 So. 2d 582, 585-86 (¶14) (Miss. Ct. App. 2004), this Court affirmed the denial of child support modification when evidence showed the petitioner's early military retirement was voluntary and foreseeable at the time of the original decree. The alleged decrease in income did not make the petitioner eligible for child support modification. *Id.* at 585 (¶12) (citing *Magee*, 755 So. 2d at 1059-60 (¶9)).

8

Bill would have provided Morgan free college tuition and a monthly housing allowance. Morgan and his wife also chose to purchase a 2018 Nissan Titan truck, which Morgan called a "retirement gift" from his wife. Around the same time, his wife also bought a new vehicle, a 2019 Nissan Altima, as well as their new home in New Jersey, knowing he would soon retire.

¶18. Moreover, although not raised by Morgan, we note the chancellor did not err in refusing to enforce the parties' oral agreement to reduce Morgan's child support. The parties did not seek this modification through a court order. An out-of-court agreement between parents to modify child support is unenforceable. *Bell on Mississippi Family Law*, §13.11[5][b], at 542. "[P]arents cannot contract out of their obligation to pay child support . . . ." *Bittick v. Bittick*, 987 So. 2d 1058, 1062 (¶12) (Miss. Ct. App. 2008). "Once the order is set, 'no party obligated by a judicial decree to provide support for minor children may resort to self-help and modify his or her obligation with impunity. The interest of children weighs in the judicial mind far heavier than those of either parent.'" *Price v. Snowden*, 187 So. 3d 159, 164 (¶18) (Miss. Ct. App. 2015) (quoting *Cumberland v. Cumberland*, 564 So. 2d 839, 847 (Miss. 1990)). Because self-help modifications are not desirable or proper, the chancery court was under no obligation to enforce the parties' oral agreement to reduce Morgan's child support.

¶19. The chancellor heard the parties' evidence, assessed their credibility, and declined to modify the child support. We find no error in this regard. The chancery court noted that "it is evident Morgan's lifestyle is supplemented by financial resources above and beyond his

9

monthly retirement income of $1,736.66." While the chancery court was not allowed to use the income of Morgan's current wife in calculating child support, the court could take into account her income contribution to the household itself. The chancery court properly returned Morgan's child support obligation to the original amount of $800 per month.

## II.    Credit Against Child-Support Arrearage

¶20.    Morgan argues the chancellor should have credited his child support arrearage with his unordered payment of K.K.'s cheerleading expenses. Morgan contends that he and Kassi made an out-of-court agreement that he would pay for all of K.K.'s cheerleading expense (which he was not ordered to do in the California decree) while Kassi would pay for all of K.K.'s orthodontic bills (instead of just half, as ordered by the California decree). Morgan now argues he should receive a credit against his arrearage for his unordered payment of the cheerleading expenses.

¶21.    Regarding modification of child support arrearages, "[o]nly payments not yet due and owing may be modified. Vested payments of . . . child support cannot be modified or forgiven by a court." *Bell on Mississippi Family Law*, § 13.11[5][a], at 541. However, for voluntary payments allowed as set-offs to child support obligations, *Cook v. Whiddon*, 866 So. 2d 494 (Miss. Ct. App. 2004), is instructive. In *Cook*, the father argued he should have received a credit to his child support obligation for private school tuition he voluntarily paid for his children that was not ordered by the court. *Id.* at 500-01 (¶24). We affirmed the chancellor's rejection of this argument, as parents responsible for child support under a judgment are not entitled to credits for voluntary, unordered expenditures made on behalf

of the child. The chancellor reasoned that to permit such a credit for voluntary payments would be to allow parents to alter the terms of the judgment. *Id.*

¶22. The chancery court determined Morgan had a child support arrearage of $8,750, which he would pay Kassi at the rate of $200 per month, in addition to his child support obligation of $800 per month. Evidence showed Morgan made unordered payments totaling $5,377 for cheerleading expenses.[4] Morgan argues his unpaid half of the orthodontic bill of $1,881.52 should be deducted from his cheerleading payment of $5,377 to total $3,495.48. He contends this amount should be credited against his child-support arrearage of $8,750; therefore, he would only owe $5,254.52 in arrearage.

¶23. The chancery court found Morgan was not entitled to a credit to child support arrearage for his voluntary, extracurricular cheerleading payments because the cheerleading payments were not ordered by the California decree. Therefore, any amount Morgan paid beyond his obligation was voluntary and considered of his "free will and accord," so he would not be entitled to a credit to his arrearage. The chancellor applied the correct legal standard for this finding, which was not clearly erroneous.

### III. Visitation

¶24. Morgan claims the chancellor improperly limited visitation to Mississippi, which is the equivalent of terminating visitation since he now lives in New Jersey. He argues this ruling fails the non-custodial parent visitation objective "that parent and child should have

---

[4] The California decree had no provision for payment of extracurricular activities. Morgan was also found to owe one-half of the orthodontic bill, or $1,881.52, because the California judgment ordered the parties to each pay one-half of K.K.'s medical bills.

as close and loving a relationship as possible, despite the fact that they may not live in the same house." *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992).

¶25. "Visitation should be set up with the best interests of the children as the paramount consideration." *Id.* "For visitation issues, the chancellor is granted broad discretion." *Rogers v. Morin*, 791 So. 2d 815, 820 (¶8) (Miss. 2001).

¶26. The chancellor thoughtfully tried to fashion a visitation schedule that would not interfere with K.K.'s school, part-time job, or extracurricular activities. Summer and holiday visitation were not limited to Mississippi. During the summer, Morgan was given "reasonable visitation" to be agreed upon by the parties and child. At Christmas, Morgan was granted visitation from December 26 until January 2. The only visitation confined to Mississippi was Morgan's suggested monthly weekend visits, just for the time being. The chancellor did not specify a rigid weekend schedule due K.K.'s age and activities. From the bench, the chancellor explained:

> Dad, at this time, [the] visitation needs to occur in Mississippi. [K.K.] does not feel comfortable right now going to New Jersey . . . this is my decision that [visitation] needs to begin in Mississippi. I do not know how often you do come to Mississippi or that you may be able to come to Mississippi, but I am going to say that you are entitled to meaningful time with her, at least the first weekend of every month.

The chancellor found this limitation necessary partly due to K.K.'s testimony that she was "afraid" of her father and did not want to go to New Jersey because of the distance from her mother and home. At the same time, the chancellor found it was important that Morgan and K.K. establish a better relationship since testimony at trial showed their relationship had been "very strained."

12

¶27. There is no evidence the chancellor was manifestly wrong or clearly erroneous in modifying visitation. The limitation to Mississippi is only for monthly weekend visits.

### IV.    Damages, Attorney's Fees, or Costs

¶28. Kassi claims she is entitled to just damages, attorney's fees, and double costs pursuant to Mississippi Rule of Appellate Procedure 38 because Morgan's appeal is frivolous. An appeal is considered "frivolous" when there is "no hope of success." *McCoy v. City of Florence*, 949 So. 2d 69, 85 (¶61) (Miss. Ct. App. 2006). We cannot find there was no hope of success in Morgan's appeal; thus, Kassi's request is without merit.

### CONCLUSION

¶29. The chancery court did not err in denying Morgan's request to reduce his child support or credit his child support arrearages with voluntary payments he made for extracurricular activities. Visitation was properly modified and not limited to Mississippi as Morgan contends. Finally, we find Kassi is not entitled to damages, attorney's fees, or costs. Accordingly, the judgment of the Chancery Court of Jackson County is affirmed.

¶30. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**